GEORGE H. BRENNAN, Appellant, *against* READ GORDON, Jr., *et al.*, Respondents.

(Decided June 1st, 1885).

Employers who direct their servant to operate a machine of which he knows nothing, and furnish him an instructor to teach him how to do so, are answerable for any injury to him in the use of the machine, arising from the incompetency or negligence of the instructor. In such a case, the instructor does not stand to the party injured in the relation of a co-servant, but as a representative of the master.

APPEAL from a judgment of this court entered upon the dismissal of a complaint at the trial.

The facts are stated in the opinion.

*Edward P. Schell*, for appellant.

*Samuel G. Jelliffe*, for respondents.

CHARLES P. DALY, Chief Justice.—I think this case should have gone to the jury. The plaintiff was the porter in the defendant's store, and had never ran an elevator. He testified that he did not know anything about running one before. The defendants knew this, and one of them, Mr. Gordon, told him to go to work on the elevator, and that Mr. Harry Dilworth, who, in the plaintiff's language, "had jurisdiction over all the men in the building," would instruct him how to run it. He went to Harry Dilworth, told him what Mr. Gordon had said, to which the latter replied, "all right, go upon the elevator." Harry Dilworth then went upon the car with the plaintiff, and ran it up and down during the day, the plaintiff putting on the freight. Occasionally Dilworth would show the plaintiff how to start the ropes "once to go up and down," but he kept the elevator in his own charge nearly all day, and gave the plaintiff, at night, instruction not to start it until he came in the morning. The next day Dilworth got on the elevator occasionally, and occasionally the plaintiff ran it himself, until ten minutes to five in the afternoon, when the accident happened, at which time the plaintiff alone was in charge of the elevator. By direction of James Dilworth, a brother of Harry, the plaintiff brought up two beams, a large and a small one. When he reached the third floor, the small beam was taken off by men who were waiting for it, and James Dilworth also got off then, and went from the third floor to the top of the building; why he got off the plaintiff said he did not know, unless it was for protection. After James Dilworth got off, the plaintiff started the elevator again upwards with the large beam, projecting three or four feet above the cross beam of the elevator, the elevator being without any cover upon the top. The plaintiff stopped within three or four feet of the roof, where, as he said, he knew it was safe, and turned round to untie the beam from the elevator, and as he did so he felt the elevator "jumping up," and turning around saw, as he says, Harry Dilworth above, with his hand on the rope, pulling the elevator up; so that the plaintiff could not stop

it; and the beam, which was from 9 to 12 feet long, struck the roof above, and broke the clutches of the drum, which were of cast iron, the rope unwound off the drum, and the elevator fell with the plaintiff upon it, down the entire shaft, to the cellar, by which the plaintiff was injured.

Harry Dilworth, the plaintiff testified, had hold of the rope in his hand when the beam struck the roof. The plaintiff further testified that the elevator had not been turned over to him when the accident occurred; that it was still under Harry Dilworth's control, and that he, the plaintiff, was still under his instructions; that he could start and stop the elevator, but was not thoroughly acquainted with it. "Every once and a while," he testified "when I ran the elevator alone, I used to make a stumble of it; when I wanted to go up, I would go down, and I was not thoroughly broke in upon the elevator; I was learning;" and "that he had to go upon it, that is to do as the head of the firm told him, or get out of the house."

The defendants having ordered the plaintiff, who was their servant, to run the elevator, and furnished him with an instructor to teach him how to do so, were answerable for any injury to the plaintiff in the use of the machine, arising from the incompetency or negligence of the instructor, for the defendants put the instructor in their place to discharge a duty which they owed to the plaintiff in the management of a machine of which he knew nothing, and in such a case the instructor does not stand to the party injured in the relation of a co-servant, but as a representative of the master, for whose incompetency or negligence the master is answerable (*Railroad Co.* v. *Fort*, 17 Wall. [U. S.] 554; *Mann* v. *Delaware &c. Canal Co.*, 91 N. Y. 500; Wood on Master and Servant, §§ 349, 350, 444).

The judge could not hold, as a matter of law, upon the evidence, that the plaintiff had learned how to run the elevator, and was no longer under the instruction of Harry Dilworth, the plaintiff having testified to the contrary; nor that the injury arose from the plaintiff's negligence, he having testified that it was Harry Dilworth's pulling up the

elevator by the rope that caused the beam to strike the roof above and break the clutch of the drum. Both questions, in my judgment, were questions for the jury, which could not be taken from them; and I think, therefore, that a new trial should be granted.

ALLEN, J., concurred.

Judgment reversed and new trial granted.